[Civ. No. 41459. Second Dist., Div. Four. Apr. 22, 1974.]

In re the Marriage of ROSALIND SANDRA and
GARY LEW WARNER.
ROSALIND SANDRA WARNER, Respondent, v.
GARY LEW WARNER, Appellant.

## COUNSEL

Lascher & Rader and Richard E. Rader for Appellant.

Thomas J. Koerber for Respondent.

## OPINION

**JEFFERSON, Acting P. J.**—On November 12, 1971, the wife, Rosalind Sandra Warner, obtained an interlocutory default judgment of dissolution of her eight-year marriage to husband Gary Lew Warner. A final judgment of dissolution was entered, at the husband's request, on March 8, 1972. On April 6, 1972, Rosalind filed a motion to vacate the interlocutory judgment, claiming that her attorney of record had failed to represent her properly and that she had been subjected by her husband to fraud and duress. On May 12, 1972, the trial court granted the wife's motion to set aside the judgment. Husband Gary Warner appeals.

 Both the wife's motion to vacate, and the trial court's order herein under review purported to relate to the interlocutory decree in its entirety. The breadth of the motion and order creates procedural problems which we deal with at the outset.

No motion to vacate the final decree of dissolution was ever made, nor did the order under review purport to affect the final decree. The interlocutory decree, in addition to the usual language providing for the dissolution of the marriage by a final decree,[1] also contained provisions: (a) granting custody of the minor children to the wife;[2] (b) providing for the support of those children;[3] (c) providing for support of the

---

[1]"The court also orders that . . . a final judgment of dissolution be entered . . . after the expiration of at least six months from the date the court first obtained jurisdiction of the respondent."

[2]"Petitioner is awarded the care, custody and control of the minor children of the parties, namely MICHELLE BELINDA WARNER, born March 23, 1964 and KAREEN KIM WARNER, born October 1, 1966, with right of reasonable visitation reserved to respondent."

[3]"Respondent shall pay to petitioner, for the support of the said minor children of the parties, the sum of $100.00 per month per child, for a total sum of $200.00 per month, payable one-half on the first day of each month and one-half on the fifteenth day of each month commencing on November 15, 1971 and continuing until said child dies, becomes emancipated or until further order of the court.

"Respondent agrees to continue in full force and effect, and to pay premiums when due, on all life insurance policies of parties, and to change the beneficiary,

wife;[4] and (d) dividing the community property.[5] The final decree granted dissolution and purported to confirm the other provisions of the interlocutory decree. The result is that the order under review left standing, unrevoked, a final decree which, in part, rested on provisions which that order purported to vacate.

We are cited to no authority, and have found none, dealing with the procedural dilemma thus presented. We conclude: that, except as to the property division, child custody and child support portions of the interlocutory decree, the purported vacation of the interlocutory decree was an action that accomplished no significant legal result. In the only comparable situation which we can discover—namely, motions to vacate defaults—the law is well settled that an order which vacates only the entry of a default without also vacating a default judgment accomplishes nothing, since the judgment still remains in full force and effect. We think the same result follows here as to the provisions of the interlocutory decree which dealt with dissolution of the marriage and with spousal support. Both of these, under the present statutes, must be dealt with in the final decree;[6] the interlocutory decree's provisions in these respects are purely prognostic of what ultimately will be decreed. The statutes do provide, however, for orders governing property divisions,[7] child custody and child support to be accomplished prior to the final decree;[8] as to those matters the confirming language in the final decree added nothing and the order herein under re-

---

thereof from petitioner to the minor children of the parties, MICHELLE BELINDA WARNER and KAREEN KIM WARNER.

"Respondent agrees to pay any and all reasonable ordinary medical and dental bills incurred for the treatment and care of the parties' minor children not covered by insurance policies owned by respondent."

[4]"Respondent shall pay to petitioner as and for spousal support the sum of $300.00 per month for 6 months, commencing on September 1, 1971 and continuing until February 1, 1972. Petitioner agrees to waive all alimony payments after this date. Petitioner realizes that by waiving alimony after this six months period, she will be barred from making any further claims for alimony."

[5]"Petitioner is awarded as her sole and separate property the following:
(a) 1971 Toyota automobile;
(b) Furniture and furnishings of the parties as they may agree.
"The Property Settlement Agreement heretofore executed by the parties on August 30, 1971, is hereby approved, ordered filed and incorporated herein by reference thereto as though set forth in full, and the parties are ordered to execute the executory provisions thereof."

[6]Civil Code sections 4514 and 4801, subdivision (a).

[7]Civil Code section 4800: ". . . the court shall . . . in its interlocutory judgment of dissolution of the marriage . . . divide the community property and the quasi-community property. . . ."

[8]Civil Code sections 4600 and 4700.

view accomplished a total vacation of the provisions originally in the interlocutory decree.

As will appear below, the wife's attack on the interlocutory decree was directed only to the provisions therein which related to the property division. We find no attack on the child custody order (which was in her favor) or on the provisions for child support. It follows that, although her motion was directed to the interlocutory decree in its entirety, and the order under review purports to vacate it in its entirety, the record does not support so much of the order as vacated the child custody and child support portions of the interlocutory decree. To that extent the order must be reversed.

We turn now to the portion of the order that vacated the property division portions of the interlocutory decree. From the affidavits filed by the parties with respect to the motion to vacate and the remainder of the record before us, we have gleaned the following facts:

In August 1971 Rosalind, having become interested in another man, informed Gary that she wanted to dissolve their marriage. Gary was upset and bitter about this development, but agreed. Both parties consulted attorney Slater and retained him in this matter. Attorney Slater drafted a property settlement agreement which was signed by the parties under date of August 30, 1971, and filed with the dissolution petition on September 7, 1971. Gary was served by Slater on September 8, 1971, and his default was entered the following month.

On November 12, 1971, the matter came up for default hearing. The wife's affidavit and the husband's counteraffidavit are in agreement that Rosalind was upset on this occasion and was hesitant about going forward with the action. Rosalind claims that when she expressed reluctance, Gary insisted she proceed and threatened her that, if she did not, she would get no support from him whatsoever. Rosalind further claimed that at that time she did not know the value of the community assets, nor was she aware that she was entitled to one-half of them. The husband claimed that Rosalind was insistent that her interest was nonmaterial and she only wanted an automobile and some furniture. In any event, she agreed to proceed.

The material provisions of the property settlement agreement, drawn up by attorney Slater and incorporated into the interlocutory decree, divided the community assets of the parties in the following manner: to the husband, Gary, was awarded the Gary Warner Agency, an insurance business, and the family home in Tarzana; to the wife, Rosalind, one Toyota automobile and some furniture. Rosalind was to receive spousal

support of $300 per month for six months; she was awarded custody of two daughters, ages 7 and 4½ years, and child support of $100 per month per child. Provision was made for the maintenance by the husband of life insurance coverage, with the minors as beneficiaries, and he was further obligated to pay the children's medical expenses.

Rosalind's affidavit was uncontroverted with respect to her statement that she learned at a later time that the agency awarded to Gary was valued at $60,000 and the house at $54,500 when the property settlement agreement was made, and that Gary's earnings were $50,000 per year. Her affidavit does not refer to the possibility that there were additional community assets, but the husband makes reference in his affidavit to a savings account of $3,295.27, which was in his possession in August 1971; the nature of that asset is not clear. Husband further claims that it was at *his* insistence that the provisions for the children involving life insurance coverage and medical expenses were included in the settlement.

At some point after the entry of the interlocutory decree, Rosalind consulted attorney High regarding this matter. On April 6, 1972, attorney High filed a noticed motion to set aside the interlocutory judgment. Actual substitution of attorney High for Rosalind's attorney of record, Slater, was executed by counsel on April 20, 1972, and filed with the court on April 27, 1972, the date of the hearing on the motion. Attorney Satt, representing the respondent husband, objected that High was not Mrs. Warner's attorney of record at the time the motion was filed. The trial court inferentially overruled the objection to High's appearance as petitioner's attorney, ruling in petitioner's favor.

■ The husband contends on this appeal that the motion to vacate the interlocutory judgment was never properly before the court because of the failure of wife's counsel to comply with Code of Civil Procedure sections 284 and 285, which set forth the procedures required for the substitution of attorneys.

Code of Civil Procedure section 284 provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: 1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; 2. Upon the order of the court, upon the application of either client or attorney after notice from one to the other."

Code of Civil Procedure section 285 reads: "When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person,

must be given to the adverse party. Until then he must recognize the former attorney." It has been said that "The newly appointed attorney will not be recognized by the courts, and his acts will be ineffective, unless he is substituted as attorney of record or unless the opposing party, by dealing with him as an attorney, waives the failure to substitute." (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 44, p. 52.)

The question before us is whether the trial court was correct in overruling the objection to wife's representation. The substitution was filed with the court on the date of hearing. No showing has been made that the late filing of the substitution misled anyone or caused any prejudice to the husband. The problem of a technically defective substitution was considered in a similar case, *Ross* v. *Ross,* 120 Cal.App.2d 70 [260 P.2d 652], on appeal from an order granting a motion made by a wife to vacate an interlocutory decree. The argument was made that the defective substitution deprived the trial court of jurisdiction. In *Ross,* too, there was an issue of the right to act as the wife's attorney of record. The court's observation seems pertinent here (p. 74): "In the interest of justice a trial court should have considerable discretion in permitting another attorney to specially appear for a particular purpose, especially such as the one involved here." (See also *Carrara* v. *Carrara,* 121 Cal.App.2d 59, 62 [262 P.2d 591].)

We conclude that, under the circumstances of this case, the trial court did not rule incorrectly on the motion.

■ Husband further contends that the wife's affidavit in support of her motion was insufficient to invoke the remedial procedure set forth in Code of Civil Procedure section 473, which provides, in pertinent part, that: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. Application for such relief *must* be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted. . . ." (Italics added.) Husband points out that Rosalind did not include, in addition to her affidavit, any proposed pleading as required by the statute.

Petitioner's motion, however, was addressed not only to the power of the court conferred by Code of Civil Procedure section 473 to remove default judgments, but to its general equitable power to give relief from a judgment made under circumstances of duress and fraud. (See *Sanchez* v. *Sanchez,* 273 Cal.App.2d 159, 163 [77 Cal.Rptr. 884].) We find no abuse of discretion here. The disparity in the division of community assets hardly could

have been greater, and there is the further circumstance of the wife's initial legal representation which, when coupled with the result, raised a serious issue of adequacy. The pressures to which the petitioner was subjected in arriving at a property settlement agreement awarding to the respondent most of the community property were of the nature intended to be eliminated by the Family Law Act of 1970, particularly Civil Code section 4800 which provides for equal division of community property *irrespective of marital fault*. The trial court undoubtedly had in mind the consequences of this unfortunate matter as such consequences might affect the minor children of the parties, a consideration which may explain the liberal attitude of courts in removing default judgments in family law cases.

Insofar as the order of May 12, 1972, purports to affect the provisions of the final decree of dissolution entered on March 8, 1972, dissolving the marriage of the parties and providing for the support of the wife, it was a nullity; those portions still stand and are in full force and effect. Insofar as the order of March 12, 1972, purports to vacate those portions of the interlocutory judgment (numbered subpars. 2, 6 & 7) relating to child custody and child support, it is reversed; and insofar as it vacated the portions of the interlocutory judgment relating to property matters (numbered subpars. 4 & 8 of that judgment) it is affirmed. The matter is remanded to the superior court for such further proceedings as may be appropriate in view of this opinion. The wife shall recover her costs on appeal.

Kingsley, J., and Dunn, J., concurred.