[No. B041699. Second Dist., Div. Two. Jan. 16, 1991.]

ALBERT BAKER et al., Plaintiffs and Appellants, v.
CLIFTON BOXX et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 2 of the Discussion.

COUNSEL

Berger & Stolar, Michael Jay Berger and Steven R. Stolar for Plaintiffs and Appellants.

Munger, Tolles & Olson, Steven M. Perry, Haight, Brown & Bonesteel, Roy G. Weatherup, Desmond J. Hinds, Zeb Francoeur, Omansky, Bradford & Clark, Thomas R. Bradford, Crowley & Cuneo, J. Nicholas Cuneo, McKay, Byrne, Graham & Van Dam, Gregory F. Stannard, Mary K. Joscelyn, Debra K. Meyers and Hugh L. Wright for Defendants and Respondents.

OPINION

FUKUTO, J.—Plaintiffs appeal from orders (1) quashing service of summons on defendants Charles M. Berg, Berg & Allen, Inc., and Clifton Boxx (Berg respondents), and (2) dismissing the action against defendants A.W. Ellis, Wells Fargo Bank, N.A., First Pacific Bank, and Imperial Savings Association (bank respondents) for delay in prosecution.[1] The principal issue presented is whether an amended complaint, filed and served by a new attorney for plaintiff, becomes void and ineffective to fulfill service of process requirements if the new attorney has not first filed and served a formal substitution. We find the weight of authority, not to mention practicality and fairness, dictates such a procedural lapse does not incur fatal consequences, absent proof of prejudice not here present. Accordingly, we conclude that the motions to quash and for mandatory dismissal under Code of Civil Procedure section 583.250[2] should not have been granted, but that the discretionary dismissals under section 583.410 et seq. were proper.

PROCEEDINGS BELOW

This action commenced on May 24, 1984. The complaint, naming over 200 plaintiffs, was filed and subscribed by Attorney L. Judson Shekell. Asserting numerous statutory and common law fraud and other tort claims, plaintiffs alleged they were induced by the Berg respondents, among others, to subscribe to investments that were supposed to generate legitimate federal investment tax credits. Thereafter, the Berg respondents fraudulently acquired and endorsed plaintiffs' tax refund checks, and had them

---

[1] The notice of appeal also refers to dismissals as to three other defendants. The record reflects no motions to dismiss or orders of dismissal as to them. We disregard their mention as surplusage.

[2] Section citations hereafter are to the Code of Civil Procedure.

wrongfully negotiated through the various bank respondents, principally Wells Fargo's predecessor, Crocker Bank. (Defendant-respondent Ellis was a branch manager of Crocker.) Plaintiffs sought substantial actual and punitive damages.

The original complaint was never served. Nearly three years later, on May 22, 1987, a first amended complaint was filed, bearing the name of Attorney Steven R. Stolar, with the same address and telephone as Attorney Shekell's on the original complaint. Stolar did not at that time file any substitution of attorneys. A summons issued, and the first amended complaint was served on the various respondents over the next four days, the very end of the three-year mandatory dismissal period under section 583.210, subdivision (a).[3]

Served with the summons and first amended complaint was a document dated May 24 and signed by Attorney Stolar. It stated: "NOTICE TO DEFENDANTS SERVED HEREWITH: [¶] Plaintiffs, and each of them, are serving this complaint at the present time to preserve all rights. Accordingly, plaintiffs, and each of them, hereby grant you an open extension to answer this complaint subject to 30 days written notice. [¶] Please have the person or entity responsible for the handling of this matter contact the undersigned after June 3, 1987."

Over the next year and one-half, the various respondents availed themselves of this extension, some of them confirming it by letters to Stolar. On November 10, 1988, Stolar sent letters terminating the extensions and requesting responsive pleadings by mid-December. Wells Fargo and Ellis negotiated further extensions, to January 3, 1989. In the interim, on December 23, 1988, they filed two motions to dismiss, one under the mandatory provisions of section 583.250, and the other invoking the discretionary authority of section 583.410. First Pacific Bank later filed a parallel motion to dismiss on three-year mandatory grounds, and an identical motion for discretionary dismissal, which was noticed for a later date. Imperial Savings filed a joinder in Wells Fargo's discretionary dismissal motion. The Berg respondents did not move to dismiss for delay in prosecution, but instead moved to quash service of the summons and amended complaint, on grounds similar to those of Wells Fargo's mandatory dismissal motion.

The motion to quash and the mandatory dismissal motions relied upon Attorney Stolar's failure to file substitutions as attorney for plaintiffs, either

---

[3] May 24, 1987, the end of three years after filing, was a Sunday, and May 25 was Memorial Day. Under *Ystrom* v. *Handel* (1988) 205 Cal.App.3d 144 [252 Cal.Rptr. 110], the three-year period would extend to May 26. The trial court so ruled in denying a motion to dismiss which is not before us. We will assume May 26 was the last day of the three-year period.

before or after filing the first amended complaint. Respondents contended Stolar's amended complaint therefore could not be recognized as an operative pleading; hence, service of summons and complaint, as required by sections 415.10, 416.10, and 583.210, subdivision (a), had not been accomplished.

In response to the mandatory dismissal motions, Stolar filed a declaration stating that when he filed the first amended complaint, approximately 190 of the more than 200 captioned plaintiffs had signed agreements retaining him. Another six plaintiffs signed agreements soon after the filing. Nine captioned plaintiffs rejected his request for authorization, although some of them contradictorily forwarded a retainer fee. Of the remaining 54 plaintiffs, some had sought his representation verbally and others had not been located.

On the noticed hearing date, the court continued the motions to dismiss and ordered that Stolar provide a further declaration detailing his authority to represent the plaintiffs. Stolar's second declaration mirrored his first, but revised the categories of plaintiffs to correct computational error, and recited that one hundred seventy-nine plaintiffs had retained him before the amended complaint was filed; four more had thereafter; sixty-eight had not acted, although five of them had paid a retainer fee; and nine had, at an unstated time, "expressly declined to continue with this case." Stolar added: "Given the complexity of managing a group of plaintiffs of this size, I did not delete any plaintiffs from the caption in order to protect their rights." Concurrently, Stolar filed individual substitutions of attorneys by 143 plaintiffs. He subsequently filed an identical declaration in opposition to the Berg respondents' motion to quash.

On the motions for discretionary dismissal, the bank respondents filed declarations recounting the history of the case, noting the absence of formal discovery or settlement negotiations, and suggesting it would be impossible to complete discovery or perhaps even render the case fully at issue—especially given the impendency of cross-complaints—before five years from its commencement elapsed, in less than six months. These respondents also presented copies of papers from a predecessor action in United States District Court, involving many of the same plaintiffs and defendants. Filed in 1982, the case had been voluntarily dismissed just before commencement of the present action, because the plaintiffs were financially unable or undisposed to hire new counsel to pursue it.

In opposition, plaintiffs presented a declaration by their former counsel in the federal case. He testified he was presently representing plaintiffs in a proceeding before the United States Tax Court, to determine responsibility

for the tax refund checks allegedly misappropriated and wrongfully negotiated by Berg respondents and the bank respondents. Counsel stated Wells Fargo had contacted him about the present case just after it was filed, and there had been settlement discussions in yet another civil action involving different plaintiffs. Counsel stated the tax court case, on which plaintiffs were concentrating their efforts, would not be concluded for at least another year, and only then would the extent of plaintiffs' damages be ascertainable.

On February 8, 1989, the court heard the motions for mandatory dismissal, together with all motions for discretionary dismissal save First Pacific's. Plaintiffs' counsel argued that he had conducted informal discovery in connection with the tax court matter and could be prepared to try this case within the five-year limit. He termed the pendency and expense of the tax court litigation the primary reason for plaintiffs' nonprosecution of this case. After further argument, the court granted all motions before it. First Pacific subsequently took its motion for discretionary dismissal (identical to Wells Fargo's) off calendar. On March 22, 1989, the court granted the Berg respondents' motion to quash service.

DISCUSSION

1. *The Motion to Quash and the Mandatory Dismissals.*

The Berg respondents' motion to quash, and the mandatory dismissal motions by the remaining respondents except for Imperial Savings, attacked the service of the summons and first amended complaint at the very end of the three-year period of section 583.210, subdivision (a). (See fn. 3, *ante.*) Respondents' basic position was and is that because Attorney Stolar had not been formally substituted as attorney for plaintiffs, in accordance with sections 284, subdivision 1, and 285,[4] the first amended complaint he filed and served was an inoperative document, and therefore service of process was never properly effected. We find this contention unsustainable.

 Respondents' motions invoked the doctrine "that the attorney of record has the exclusive right to appear in court for his client and to control the court proceedings, so that neither the party himself [citations], nor another attorney [citations], can be recognized by the court in the conduct

---

[4] Section 284 provides in part: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] 1. Upon consent of both client and attorney, filed with the clerk, or entered upon the minutes; . . ."

Section 285 provides: "When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then he must recognize the former attorney."

or disposition of the case." (*Wells Fargo & Co.* v. *City etc. of S. F.* (1944) 25 Cal.2d 37, 42-43 [152 P.2d 625].) However, this general proposition is subject to many qualifications, as is illustrated by the next sentence of the cited case, which held that an associated attorney could appear without substitution under sections 284 and 285. (*Ibid.*) Where the actual authority of the new or different attorney appears, courts regularly excuse the absence of record of a formal substitution and validate the attorney's acts, particularly where the adverse party has not been misled or otherwise prejudiced. (E.g., *Crocker National Bank* v. *O'Donnell* (1981) 115 Cal.App.3d 264, 268-269 [171 Cal.Rptr. 225] [terming failure to file substitution a "technical objection"]; *In re Marriage of Warner* (1974) 38 Cal.App.3d 714, 719-720 [113 Cal.Rptr. 556]; *Carrara* v. *Carrara* (1953) 121 Cal.App.2d 59, 62 [262 P.2d 591] [irregularity in substitution does not oust jurisdiction].)

Respondents rely heavily on *Epley* v. *Califro* (1958) 49 Cal.2d 849 [323 P.2d 91], which involved a dismissal under former section 581a, for failure to procure judgment or the defendant's answer within three years. Although the case superficially appears to support respondents' position, on closer examination it does not.

In *Epley* the appellant and her codefendants had appeared via demurrer, filed by a law firm which thereafter took no action in the case. After three years the trial court dismissed the action as to the appellant. The court then vacated the dismissal for "inadvertence," based on the facts that a now deceased codefendant, who had been a lawyer, earlier had filed an answer and cross-complaint, the verification to which stated " 'that the attorneys of record for the defendants having withdrawn and resigned as such, he now appears herein in his proper person for himself and for the defendants and cross-complainant . . . .' " (49 Cal.2d at p. 851.) Appellant later filed a substitution of other counsel, in place of those who had filed the demurrer. (*Id.* at p. 852.)

The Supreme Court reversed the order vacating the dismissal, holding that there been no inadvertence, or error, in the original ruling. The court held the trial court had "impliedly found and concluded from the undisputed facts that . . . no authority appeared for [the codefendant] to file an answer and cross-complaint on behalf of his codefendants." (49 Cal.2d at p. 853.) In dismissing, the trial court was constructively and actually aware of both the codefendant's answer and his verification purporting to file it on appellant's behalf (what the Supreme Court termed "the purported substitution of attorneys"); hence, "His authority to do so was in direct issue. On the record the court could only have concluded that no authority appeared for [the codefendant] to represent his codefendants and therefore that as to

them no answer or cross-complaint was regularly filed." (*Id.* at pp. 853-854.)

The court then elaborated that on this record appellant had been represented for three years only by her original attorneys of record, no substitution having been made or filed in accordance with sections 284 and 285. The court paraphrased and cited *Wells Fargo & Co.* v. *City etc. of S. F., supra*, 25 Cal.2d at page 42, to the effect that the attorney of record alone may be recognized, and added that the codefendant's attorney status could not alone supplant the position of the attorneys of record. "In view of the factual situation appearing in the record, the trial court had no discretion but to dismiss the action against the appealing defendant." (*Epley* v. *Califro, supra,* 49 Cal.2d at pp. 854-855.)

Whether viewed as a whole or in parts, *Epley* does not stand for the proposition that a new attorney's failure to file a substitution of attorneys will irrevocably disempower—in respondents' term, render "a nullity"—the pleadings he files. As the Supreme Court repeatedly stated, the issue in *Epley* was simply whether the record established the codefendant's *authority* to represent and appear for the appellant. On a record lacking a substitution—and posing instead only the unilateral attestation of a dead man—the answer was negative. But that record differs widely from the present one, which contains declarations *and* substitutions attesting to Attorney Stolar's authority to appear for many of the plaintiffs.

*In re Marriage of Park* (1980) 27 Cal.3d 337 [165 Cal.Rptr. 792, 612 P.2d 882], also relied upon by respondents, further illustrates that the attorney's actual authority bears more significance than the substitution document recording it. In *Park*, the court vacated a judgment, for denial of a fair hearing, where the absent spouse had been represented by an attorney chosen by her counsel after he became a commissioner. In holding the replacement attorney should not have been allowed to appear, the court twice emphasized that, besides the absence of a substitution, "Mrs. Park never consented to the new attorney's representation." (*Id.* at pp. 343, 344.)

It would seem especially inappropriate to rest the fate of a critical pleading, not to say an entire action, on the isolated circumstance of a substitution's not appearing earlier of record, when the pleading in question is an amended complaint and the original complaint has never been served. No independent document attesting to the authority of the plaintiff's attorney must be filed before a complaint or other initial pleading is served: the pleading itself suffices to communicate the attorney's identity and prima facie authority, and establish him or her as attorney of record. Thus, in *Epley* v. *Califro, supra,* the Supreme Court recited as follows the facts

establishing appellant's original counsel as attorney of record: "On May 1, 1951, a demurrer was filed on behalf of [defendants] by and through the law firm of . . . ." (49 Cal.2d at p. 851.) Although an amended complaint filed by a new attorney technically should be preceded by a substitution, if the original complaint has never been served there is scant if any chance of the defendant being misled by a pleading bearing the new attorney's name but unaccompanied by substitution.

This court considered a similar situation in *Gillette* v. *Burbank Community Hosp.* (1976) 56 Cal.App.3d 430 [128 Cal.Rptr. 636]. There the original complaint was never served, and just before expiration of the three-year period under former section 581a "plaintiff through a different attorney filed a 'first amended complaint' " which differed from the original only in its title and in the affixed name of the new attorney. (*Id.* at p. 432.) The opinion does not indicate that a substitution was served or filed. Reversing a mandatory dismissal, we held that service of the original summons rather than an amended one was valid, in part because the amended complaint could "be properly viewed as the original complaint, even though it bore a different title and named a different attorney as counsel for plaintiff." (*Id.* at p. 434.) We concluded: "The title of a legal pleading is of less importance than the substance of the message it conveys. . . . Substance controls form, even in procedure." (*Ibid.*)

On the similar facts now before us, including the absence of any showing that respondents were misled or prejudiced by Attorney Stolar's failure to file substitutions before serving the amended complaint, we cannot conclude that that omission invalidated the pleading, resulting in noncompliance with section 583.210, subdivision (a), or defective service. (Cf. *Crocker National Bank* v. *O'Donnell, supra,* 115 Cal.App.3d at pp. 268-269; *In re Marriage of Warner, supra,* 38 Cal.App.3d at pp. 719-720; *Carrara* v. *Carrara, supra,* 121 Cal.App.2d at pp. 62-63.)[5] It follows that the motions to quash and for mandatory dismissal should not have been granted, at least as to those plaintiffs for whom Stolar filed belated substitutions or who had otherwise retained him.

The Berg respondents nonetheless urge that the order quashing service should be affirmed as to those plaintiffs who Stolar testified either had not

---

[5] Strictly speaking, the question is whether the amended complaint was void or viable without an antecedent substitution. Hence, the parties' arguments whether or not respondents' dealings with Stolar after service constituted a waiver of notice of substitution are somewhat beside the point. However, as in the cases just cited, the absence of apparent prejudice contributes to excusing timely compliance with section 284. (See also *Davis* v. *Rudolph* (1947) 80 Cal.App.2d 397, 403 [181 P.2d 765] ["While the proceedings by an attorney not of record might be irregular, still defendant was not injured thereby."].)

retained him or, in nine instances, had expressly declined to proceed with the case. We agree that upon a competent showing the latter group should be dismissed from the case, and the same may be true of the former. However, the appropriate remedy is not a motion to quash service, but perhaps a nonstatutory motion to dismiss. (See *Clark* v. *Willett* (1868) 35 Cal. 534, 538-541.) ■ Moreover, the court should consider competent evidence of these questionable plaintiffs' intentions before determining the validity of Stolar's appearance for them. (Cf. *Neihaus* v. *Superior Court* (1977) 69 Cal.App.3d 340, 346 [137 Cal.Rptr. 905] ["the question of whether or not an attorney is authorized to appear is a question of fact to be tried by a fact-finder, not by an appellate court . . . ."].) Accordingly, we shall reverse the order granting the motion to quash without prejudice to further proceedings in this regard.

### 2. *The Discretionary Dimissals.* *

. . . . . . . . . . . . . . . . . . . . .

### 3. *Conclusion.*

For the reasons stated, the orders of dismissal as to Imperial Savings and Wells Fargo and Ellis must be affirmed, notwithstanding that the alternative grant of the latter's mandatory dismissal motion was erroneous. First Pacific's posture is somewhat different: the court granted only its motion for mandatory dismissal, the separate motion for discretionary dismissal having been calendared for a later date and then taken off calendar. Nonetheless, we deem it appropriate to affirm the dismissal as to First Pacific, on the same alternative grounds. First Pacific's discretionary dismissal motion was identical to Wells Fargo's, and both plaintiffs and First Pacific addressed the issues under those motions at the hearing below. In these circumstances, affirmance as to First Pacific will not circumvent the trial court's discretion. (Cf. *Ystrom* v. *Handel, supra,* 205 Cal.App.3d at pp. 150-151.)

However, the same result is not available to the Berg respondents. Not only does their failure to move to dismiss render affirmance on discretionary dismissal grounds technically impossible, but their situation may yet pose different facts for consideration should they seek dismissal on remand.

---

* See footnote, *ante*, page 1303.

## DISPOSITION

The order granting the motion to quash service is reversed. The orders of dismissal are affirmed. The parties shall bear their own costs.

Roth, P. J., and Gates, J., concurred.