[No. E021287. Fourth Dist., Div. Two. Aug. 12, 1999.]

WILLIAM J. CASEY et al., Plaintiffs and Appellants, v.
OVERHEAD DOOR CORPORATION, Defendant and Respondent.

**COUNSEL**

Anderson & Kriger, Clayton M. Anderson and Mary M. Best for Plaintiffs and Appellants.

Sullivan, Wertz, McDade & Wallace, John S. Moot and Pamela Lawton Wilson for Defendant and Respondent.

---

## OPINION

**RAMIREZ, P. J.**—Plaintiffs William Casey et al., a group of homeowners, filed an action against defendant and others claiming strict liability and negligence for defects in the manufacture of component parts of and in the construction of plaintiffs' homes. Plaintiffs settled their claims with all defendants save Overhead Door Corporation (hereinafter Overhead).[1] Prior to trial the court granted summary adjudication in favor of Overhead on plaintiffs' strict liability cause of action. At the time of trial the court refused to permit plaintiffs to proceed on the cross-complaint that had been assigned to them as the result of a settlement, leaving them only a single cause of action for negligence. Then, pursuant to a stipulation entered after plaintiffs received an unfavorable ruling on Overhead's first motion *in limine*, Overhead moved for nonsuit/directed verdict.[2] That motion was granted[3] and judgment was entered for Overhead. Plaintiffs appeal from several orders of the trial court. They are:

1. An order summarily adjudicating plaintiffs' cause of action for strict liability in favor of defendant Overhead;

2. The court's entry of judgment pursuant to an order of nonsuit/directed verdict in favor of Overhead; and

3. A judgment awarding attorney fees and costs to Overhead pursuant to Code of Civil Procedure sections 998 and 1021.1.

Plaintiffs argue each of these rulings was error. We disagree with plaintiffs insofar as the trial court's decisions regarding their causes of action for strict liability and negligence are concerned. However, we find the trial court erred in refusing to permit plaintiffs to proceed on the cross-complaint which had been assigned to them. We therefore affirm in part and reverse in part.

---

[1]Overhead Door Corporation is the successor in interest to Premier Products, Inc., and the company appears by both names throughout the record.

[2]While generally a stipulated judgment cannot be appealed, a party may agree to dismiss an action after an adverse ruling by the trial court, if the dismissal is intended to expedite the appeal and is not truly a voluntary relinquishment of the action. (*Denney* v. *Lawrence* (1994) 22 Cal.App.4th 927, 930, fn. 1 [27 Cal.Rptr.2d 556]; *Ashland Chemical Co.* v. *Provence* (1982) 129 Cal.App.3d 790, 792-793 [181 Cal.Rptr. 340].)

[3]Neither the parties nor the court ever clarified whether the motion granted was a nonsuit or a directed verdict. However, that fact has no bearing on our determination.

## FACTS AND PROCEDURAL HISTORY

On May 25, 1994, plaintiffs filed an action against Watt Inland Empire, Inc. (hereinafter Watt), the developer of homes they purchased, for numerous deficiencies found therein, including defective and leaking windows. After answering the first amended complaint, Watt filed a cross-complaint for indemnity, breach of contract and warranty, and declaratory relief against several subcontractors. On March 2, 1995, that cross-complaint was amended to add Premier Products, Inc., Overhead's predecessor, as a "Roe" defendant. Overhead answered the cross-complaint on June 27, 1995. On June 29, 1995, plaintiffs amended their first amended complaint to add several new defendants, including Premier Products, Inc. Overhead answered the complaint on July 21, 1995.

Over the next several months plaintiffs settled with all defendants except Overhead. Plaintiffs' settlement with Watt included "an assignment by Watt . . . to the plaintiffs of indemnity rights, if any, held pursuant to the contracts with the remaining non-settling subcontractors . . . ."

On September 20, 1995, plaintiffs filed a second amended complaint, which contained causes of action for strict product liability and negligence, naming both Watt and Premier Products, Inc. Overhead answered and filed a motion for summary adjudication of plaintiffs' cause of action for strict liability. Summary adjudication was granted as to plaintiffs' cause of action for strict liability on December 11, 1996.

On Monday, June 2, 1997, the court began pretrial hearings. The court, of its own accord, based on assertions plaintiffs made in their supplemental trial brief, requested argument regarding why plaintiffs should be entitled to pursue a cause of action for indemnity, since the operative second amended complaint contained no such cause of action. After hearing counsel for both sides, the court determined plaintiffs had failed to plead a cause of action for indemnity and therefore could not proceed to trial on that theory. The court then heard defendant's motion *in limine* to exclude the testimony of Thomas Benke, plaintiffs' cost estimator, on economic loss damages, claiming such items were not recoverable in this situation. After hearing argument from both parties the court granted the motion, finding damages for economic loss are not compensable in a tort action. Counsel for plaintiffs represented in light of that ruling, "I cannot prove up a complete cause of action in tort . . . ." Counsel thereafter stipulated that "[t]he only method of repair which serves as the basis of Plaintiffs' damages to which Plaintiffs' cost estimator will testify is for the removal and replacement of all the windows in all the homes." Based upon that stipulation, Overhead moved for a nonsuit/directed

verdict, which the court granted. Judgment was entered for Overhead on June 27, 1997.

Overhead filed memoranda of costs on August 6 and September 9, 1997, claiming $134,757.02 and $151,537.02 in total costs, respectively. It filed a motion for attorney fees pursuant to Code of Civil Procedure sections 998 and 1021.1 on September 5, 1997, seeking $70,398.00. Plaintiffs filed a motion to tax or strike costs and opposed the motion for attorney fees.

Plaintiffs filed their notice of appeal from the judgment on September 22, 1997. However, on October 28, 1997, the trial court granted attorney fees and costs to Overhead and amended the judgment to reflect the amounts owed by plaintiffs to Overhead. On December 2, 1997, this court found the appeal timely and valid and construed the appeal to be taken from both the original judgment and the amended judgment.

DISCUSSION

A. *Summary Adjudication*

1. *Standard of Review*

■ A grant of summary adjudication is reviewed de novo. (*Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 385 [62 Cal.Rptr.2d 803].) Our review is guided by Code of Civil Procedure section 437c, which provides in subdivisions (c) and (f) that a motion for summary adjudication of a cause of action may only be granted when, considering all of the evidence set forth in the papers and all inferences reasonably deducible therefrom, it has been demonstrated there is no triable issue as to any material fact as to that cause of action. We first look to the pleadings and decide whether the defendant has presented facts to negate an essential element of, or to establish a defense to, each cause of action sought to be adjudicated. If so, we then determine whether the plaintiff has demonstrated the existence of a triable, material issue of fact. (*Ibid.*)

2. *Overhead Has Demonstrated Plaintiffs Cannot Prove Their Cause of Action for Strict Liability and Plaintiffs Have Not Demonstrated a Triable Issue of Material Fact.*

■ The complaint asserts Overhead is strictly liable to plaintiffs as it designed and manufactured finished window products, which were defective when they were sold to the developer that installed them in plaintiffs' homes. In essence, plaintiffs contend Overhead has failed to meet its burden

of providing evidence to show that plaintiffs cannot prove their strict liability cause of action. We disagree.

█ In the context of mass-produced homes, while the courts have extended the concept of strict product liability to allow purchasers to sue the developer/seller under that theory (*Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749]), they have refused to extend the principle beyond the developer to the subcontractors or suppliers. (*La Jolla Village Homeowners' Assn.* v. *Superior Court* (1989) 212 Cal.App.3d 1131, 1144-1146 [261 Cal.Rptr. 146].) "[A] subcontractor who does not have any ownership or control over the project or over its portion of the project being built should not be held strictly liable for defective or dangerous conditions of the mass-produced homes." (*Id.* at p. 1145.) This applies to "all subcontractors in the typical real estate construction project regardless of whether they provided 'services' or a 'product.' " (*Id.* at p. 1146.) There is an exception when it can be shown the subcontractor was essentially the developer or was part of a joint venture having a financial interest in and control of the project. In cases where that "special relationship" is shown, even if it also provides services, the subcontractor is deemed a "manufacturer" of the homes and may be held strictly liable. (*Id.* at p. 1147.)

█ Overhead produced the agreement between it and developer Watt as evidence that it was a subcontractor providing materials, labor and equipment to a residential development project. The agreement also shows that Overhead did not have any "special relationship" to the developer and that it had no financial stake in the project beyond payment for its services as a window subcontractor. Therefore, since subcontractors are not strictly liable (*La Jolla Village Homeowners' Assn.* v. *Superior Court, supra,* 212 Cal.App.3d at p. 1145), Overhead has met its burden of showing that plaintiff cannot prevail against it on a cause of action for strict liability.

Plaintiffs argue that *La Jolla* does not shield Overhead from strict liability because Overhead was the manufacturer of a defective product, to wit, windows, window frames and window components. In so doing, plaintiffs attempt to distance themselves from the fact that this is essentially a claim for a construction defect in a component part of a mass-produced home. Plaintiffs have presented no evidence to refute the fact that Overhead was a subcontractor and materials supplier to the project. Rather, they argue that because Overhead was also a manufacturer, *La Jolla* does not apply.

*La Jolla* is not limited as plaintiffs suggest. █ The distinction is not between material or service suppliers (i.e. subcontractors), on the one hand and materials manufacturers on the other. Instead, the distinction is between

the developer, which "manufactures" the homes, and the rest of the participants, regardless of whether they provide a service, supply a component or manufacture a component part. The principle of risk distribution, fundamental to the doctrine of strict liability, is effected by holding the developer strictly liable for all defects in mass-produced homes. The developer, which also approves all of the materials and labor used to build the homes, is in the best position to proceed against the subcontractors and/or materials suppliers on an indemnity theory, if warranted, and is also normally in privity with the homeowner and is therefore a readily available source of compensation. (*La Jolla Village Homeowners' Assn.* v. *Superior Court, supra,* 212 Cal.App.3d at p. 1145.)

■ Therefore, we find that *La Jolla* controls and Overhead is not liable to plaintiffs regardless of whether it is characterized as a manufacturer or supplier of materials or a subcontractor. We disagree with the dicta in *Monte Vista Development Corp.* v. *Superior Court* (1991) 226 Cal.App.3d 1681 [277 Cal.Rptr. 608], to the extent it is contrary to our decision.[4]

Since plaintiffs have failed to prove the existence of a triable issue of material fact that it may maintain a cause of action for strict liability against Overhead, summary adjudication was proper.

B. *Judgment After Nonsuit*

1. *The Trial Court Erred in Refusing to Allow Plaintiffs to Pursue Watt's Cross-complaint for Indemnity.*

■ Plaintiffs assert the court should have allowed them to pursue Watt's cross-complaint for indemnity against Overhead because the settlement between plaintiffs and Watt included the assignment/transfer of that cause of action. Plaintiffs contend the assignment was all that was needed to enable them to pursue the cause of action. We believe plaintiffs would have been better served by taking more affirmative steps to communicate their

---

[4]The *Monte Vista* court disagreed with *La Jolla*'s holding that all subcontractors, whether suppliers of services or products, were exempted from strict liability. (*Monte Vista Development Corp.* v. *Superior Court, supra,* 226 Cal.App.3d at p. 1686.) Applying the Restatement Second of Torts section 402A, the *Monte Vista* court determined a service provider was not in the chain of distribution and was therefore exempt. However, the court concluded, "sellers" of materials used in the construction of mass-produced homes could be strictly liable. (226 Cal.App.3d at pp. 1686-1687.) That conclusion was unnecessary to the holding, since the *Monte Vista* court upheld the dismissal of a strict liability claim against a service provider, and was therefore dicta.

intent to assert their rights. However, we find the court should have recognized plaintiffs' actual authority to proceed to trial on the cross-complaint.[5] Therefore, on this issue, we reverse.

■ Code of Civil Procedure section 367 provides the general rule that actions must be pursued in the name of the real party in interest. However, there is an exception when a party transfers its interest in a pending action to another.[6] In those circumstances, "[t]he action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." (Code Civ. Proc., § 368.5.) In the event of a transfer of interest in a pending action, the attorney for the nominal party/assignor does not automatically cease to be the attorney of record. (See, e.g., *Davis* v. *Rudolph* (1947) 80 Cal.App.2d 397, 401 [181 P.2d 765]; *Tuffree* v. *Stearns Ranchos Co.* (1899) 124 Cal. 306 [57 P. 69]; *Crescent Canal Co.* v. *Montgomery* (1899) 124 Cal. 134 [56 P. 797].) Generally, ". . . the attorney of record has the exclusive right to appear in court for his client and to control the court proceedings, so that neither the party himself [citations], nor another attorney [citations], can be recognized by the court in the conduct or disposition of the case." (*Wells Fargo & Co.* v. *City etc. of S. F.* (1944) 25 Cal.2d 37, 42-43 [152 P.2d 625].) An exception to this rule is recognized when counsel associates another attorney. (*Ibid.*) In addition, where a new attorney appears to have actual authority to act on behalf of a party, ". . . courts regularly excuse the absence of record of a formal substitution and validate the attorney's acts,

---

[5]The trial court's ruling appears to have been based upon a determination that plaintiffs had not amended their complaint to include the assigned indemnity cause of action, which was therefore not before the court. The court failed to consider the independent nature of a cross-complaint, and that trial can proceed under more than one operative pleading. (Code Civ. Proc., § 1048.)

Further, procedurally it is unclear what happened to the assigned cross-complaint as a result of the trial court's ruling. During oral argument, Overhead urged that the trial court had merely severed the indemnity cause of action. Were this true, there would be no final judgment and this appeal would be dismissed. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 736-744 [29 Cal.Rptr.2d 804, 872 P.2d 143].) However, after a thorough review of the record, we conclude it does not support Overhead's interpretation. The court's words did not communicate to plaintiffs that there was any hope of proceeding to trial on the cross-complaint at a future time. It simply stated, "the Court would not intend to permit Plaintiff[s] to proceed on the indemnity cause of action." Because the action comports with our understanding of what occurred in the trial court and for the sake of judicial economy, we deem the court's refusal to allow plaintiffs to pursue that action a dismissal of the cross-complaint and proceed accordingly.

[6]Overhead asserts Watt transferred its right to indemnity and not its actual cross-complaint. We are not persuaded by this argument. At the time of the transfer, Watt was indeed pursuing its right to indemnity by way of a cross-complaint against Overhead. The rights assigned were, therefore, the subject of a pending action. As such, the law allows the assignees (plaintiffs) to pursue the action in the name of the assignor, Watt, for their own protection and benefit. (Code Civ. Proc., § 368.5.)

particularly where the adverse party has not been misled or otherwise prejudiced. [Citations.]" (*Baker* v. *Boxx* (1991) 226 Cal.App.3d 1303, 1309 [277 Cal.Rptr. 409].)

It is undisputed that Watt transferred its indemnity rights against the subcontractors, including Overhead, to plaintiffs. Plaintiffs admit they never sought to substitute themselves in the cross-complaint in place of Watt. Further, the record contains no evidence that plaintiffs ever attempted to file a substitution of attorney to enable their attorney to represent Watt in the prosecution of the cross-complaint in Watt's name. Nevertheless, we conclude plaintiffs' counsel had apparent authority to act on behalf of Watt. As nominal party only, Watt had no authority to control, direct or interfere with the cross-complaint for indemnity as these rights lay with plaintiffs as real parties in interest. (*Crescent Canal Co.* v. *Montgomery, supra,* 124 Cal. at pp. 142-143.) Since these rights lay solely with plaintiffs, it follows a fortiori that their attorney in the action had actual authority to act on behalf of Watt insofar as the cross-complaint for indemnity was concerned. (See, e.g., *Walker* v. *Felt* (1880) 54 Cal. 386 [court recognized right of assignee's attorney to proceed absent change of attorney of record].)

In spite of its protestations to the contrary, we find Overhead was not misled or prejudiced by plaintiffs' failure to substitute their attorney as counsel of record for Watt. Overhead was aware of the assignment of the indemnity rights when it was served with the notice of determination of good faith settlement (which Overhead contested) between plaintiffs and Watt on February 22, 1996. Further, Overhead was on notice that plaintiffs intended to pursue their rights under the cross-complaint as of April 11, 1997, nearly two full months prior to the scheduled trial date.[7] Finally, we find no reason that the cross-complaint could not have been pursued against Overhead at the time of trial on June 2, 1997, by Watt's counsel of record, had he appeared.

The law abhors the forfeiture of the right to a determination of a cause of action on the merits. (*Nasir* v. *Sacramento County Off. of the Dist. Atty.* (1992) 11 Cal.App.4th 976, 986, fn. 5 [15 Cal.Rptr.2d 694].) Under these facts, the court's refusal to allow plaintiffs to proceed on the assigned cross-complaint for indemnity acted as such a forfeiture. We must therefore conclude that the court erred in failing to recognize plaintiffs' actual authority to proceed to trial on the cross-complaint.

---

[7]At oral argument, as it had in its brief on appeal, Overhead also complained it was prejudiced by its lack of knowledge that plaintiffs intended to pursue the indemnity claim because it was precluded from conducting discovery. We find it significant that Overhead does not point to any motion made below requesting leave to conduct discovery on this issue.

## 2. *Plaintiffs Cannot Prove Their Cause of Action for Negligence Against Overhead.*

 Plaintiffs claim the court erred in sustaining Overhead's motion *in limine* to preclude their cost estimator from testifying to economic losses. We disagree.

A consumer may not recover economic loss damages against the manufacturer of a defective product in a cause of action for strict liability or negligence. (*Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 18 [45 Cal.Rptr. 17, 403 P.2d 145]; *Sacramento Regional Transit Dist.* v. *Grumman Flxible* (1984) 158 Cal.App.3d 289, 294 [204 Cal.Rptr. 736].)

Since plaintiffs could not recover economic losses, testimony on that item of damages would have been irrelevant. Irrelevant evidence is not admissible. (Evid. Code, § 350.) As such, the court was correct in ruling plaintiffs' cost estimator could not testify to economic losses.

Plaintiffs argue they were entitled to present evidence of damages that did not constitute economic losses. Plaintiffs are correct. However, the trial court's ruling on Overhead's motion *in limine* did not prevent them from doing so. The motion sought to preclude only evidence of economic damages. While Overhead urged a particular definition of economic damages that was beneficial to it, the court did not have to, nor is there any indication that the court did, adopt the definition proffered by Overhead in granting the motion. Thus, after the court's ruling on the motion, plaintiffs were not precluded from proceeding to trial and eliciting testimony from their experts and/or others regarding damages that were not economic losses. Why they failed to do so is a mystery to this court.

The entry of nonsuit after this ruling would not have been proper had plaintiffs made an offer of proof that they could show damages that were not economic losses. (*Gray* v. *Kircher* (1987) 193 Cal.App.3d 1069, 1071-1072 [236 Cal.Rptr. 891] [nonsuit proper only when assuming truth of facts, cause of action cannot be proved].) During argument below, plaintiffs suggested they could prove the defectively manufactured windows caused damage to the drywall and framing and resulted in insect infestation and damage to personal property. Nevertheless, after the ruling granting Overhead's first motion *in limine*, plaintiffs stipulated that "[t]he only method of repair which serves as the basis of Plaintiffs' damages to which Plaintiffs' cost estimator will testify is for the removal and replacement of all the windows in all the

homes."[8] In so doing, plaintiffs admitted that the cost estimator would not testify that repair would include new drywall, new framing and removal of the insects. Plaintiffs are bound by this admission. (*Reveles* v. *Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1149 [67 Cal.Rptr.2d 543].) In addition, plaintiffs' counsel admitted on the record that "[i]n light of that ruling [precluding testimony regarding economic losses, they] . . . cannot prove up a complete cause of action in tort." This admission acts as a conclusive concession of truth and has the effect of removing that issue from the court's consideration. (*Smith* v. *Walter E. Heller & Co.* (1978) 82 Cal.App.3d 259, 269 [147 Cal.Rptr. 1].) Plaintiffs cannot assert a measure of damages on appeal that was not presented to the trial court. (*Kantlehner* v. *Bisceglia* (1951) 102 Cal.App.2d 1, 6 [226 P.2d 636].) Plaintiffs having admitted below that they had no evidence to support a claim for any measure of damages other than economic loss, the trial court's entry of nonsuit on the negligence cause of action was correct.

## C. *The Award of Attorney Fees and Costs Must Be Reversed.*

█ The trial court awarded attorney fees and costs to Overhead under Code of Civil Procedure sections 998 and 1021.1. Each of these sections authorizes an award of costs and/or fees if plaintiffs fail to obtain a judgment more favorable than the statutory offers made by Overhead. (Code Civ. Proc., §§ 998, subd. (c)(1) and 1021.1, subd. (b)(3).) Since we reverse the judgment upon which the fees and costs were awarded, we must also reverse the judgment for fees and costs. (*Merced County Taxpayers' Assn.* v. *Cardella* (1990) 218 Cal.App.3d 396, 401-402 [267 Cal.Rptr. 62].)

At oral argument Overhead contended that because the indemnity cause of action was severed (or severable) from the "direct" action, the judgment upon which the fees and costs were awarded was affirmed by our tentative opinion. Therefore, it was entitled to the fees and costs awarded. Again, this argument flies in the face of the rule requiring one final judgment between the parties. Overhead has provided no authority to persuade us that an exception to the rule exists when defining a judgment for purposes of awarding costs and fees under Code of Civil Procedure sections 998 or 1021.1, and we are not aware of any such exception. Nor has any authority been given to show the indemnity action was severable or collateral.

Overhead also attempted to persuade this court that its offers to settle pursuant to Code of Civil Procedure section 998 did not include the indemnity action. At the time the offers were made, Overhead was aware that the

---

[8]The cost to repair or replace the defective product itself is purely economic loss and is not recoverable in tort. (*Sacramento Regional Transit Dist.* v. *Grumman Flxible, supra,* 158 Cal.App.3d at p. 298.)

cross-complaint for indemnity had been assigned to plaintiffs. The offers themselves contain no indication that they were made to settle for anything less than a final judgment of all issues between the parties.

Overhead's unsupported arguments are not compelling. We must reverse the judgment awarding it costs and fees. Therefore, we need not decide the merits of the arguments proffered by the parties on individually contested items.

## DISPOSITION

The judgment is affirmed in part (as to the summary adjudication of the cause of action for strict liability and the grant of nonsuit/directed verdict on the cause of action for negligence), and reversed in part (as to the dismissal of the cross-complaint for indemnity). The judgment awarding costs and attorney fees is also reversed. The parties shall bear their own costs on appeal.

Hollenhorst, J., and McKinster, J., concurred.

A petition for a rehearing was denied September 10, 1999, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied December 1, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.